Daniel R. Watkins, Esq.
Nevada State Bar No. 11881
dw@wl-llp.com
Caryn R. Schiffman, Esq.
Nevada State Bar No. 14610
cschiffman@wl-llp.com
WATKINS & LETOFSKY, LLP
8935 S. Pecos Rd., Ste 22A
Henderson, NV 89074
Office:(702) 901-7553; Fax: (702) 974-1297
Attorneys for Plaintiff, Karl M. Jordan

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KARL M. JORDAN, an individual<br><br>Plaintiff,<br><br>vs.<br><br>GEORGIA-PACIFIC GYPSUM LLC a foreign limited liability company; AND DOES 1-50, inclusive, and ROE CORPORATIONS 51-100, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**(DEMAND FOR JURY TRIAL)** |

COMES NOW, Plaintiff Karl M. Jordan ("Plaintiff") files this civil action against Defendants, and each of them, for violations of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et. seq.) Title VII of the Civil Rights Act of 1991 (42 U.S.C. § 1981 et. seq.) Nevada Revised Statutes 613.330 et. seq. and related claims under Nevada law seeking damages and alleges as follows:

## JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 and 24 U.S.C. §2000e-5(f)(3), which confer original jurisdiction on federal district courts in suits to address deprivation of rights, privileges and immunities secured by the United States Constitution and federal law.

2.  The jurisdiction of this Court is also invoked under 42 U.S.C. §§ 1981 and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, and any related claims under Nevada law.

3.  Supplemental Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 over the State law claims which are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

4.  Plaintiff has exhausted administrative remedies.

5.  All conditions precedent to jurisdiction under section 706 of Title VII, 42 U.S.C. §2000e 5(f)(3), have occurred or been complied with:

   a.  A charge of employment discrimination was filed with the Nevada Equal Rights Commission ("NERC") within 300 days of Plaintiff instituting proceedings with a State or local agency with authority to grant or seek relief from such unlawful employment practices alleged herein.

   b.  A Notice of Right to Sue in Federal Court was received from the Equal Employment Opportunities Commission ("EEOC"), dated July 19, 2022. A true and correct copy of said letter is attached and incorporated herein as **Exhibit "1."**

6.  Plaintiff initiated this action within 90 days of receipt of the EEOC's Notification of Right to Sue.

7.  Venue is proper in the District of Nevada because the unlawful employment practices alleged herein were committed in whole or in part in the District of Nevada pursuant to 28 U.S.C. § 1391(b).

## PARTIES

### PLAINTIFF

8.  Plaintiff, Karl Jordan, was a qualified/eligible "employee" of Defendant, Georgia-Pacific Gypsum LLC ("Defendant") within the meaning of 42 U.S.C. §2000e(f) and Title VII of the Civil Rights Act of 1991 (42 U.S.C. §1981 et seq.) (collectively, "Title VII"); and related claims under Nevada law.

//

9.  Defendant is a foreign limited liability corporation qualified to do business in Nevada and employs fifteen (15) or more employees. Defendant was Plaintiff's employer and is an "employer" within the meaning of Title VII and related claims under Nevada law. Defendant is located at 11401 Hwy 91, North Las Vegas, Nevada 89030.

10. Plaintiff is ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of DOES 1 through 50, inclusive. The Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants are in some way responsible for, or participated in, or contributed to, the matters and things complained of herein, and is legally responsible in some manner. Plaintiff will seek leave to amend this Complaint when the true names, capacities, participation and responsibilities have been ascertained.

11. Plaintiff is ignorant of the true names and capacities of ROE CORPORATIONS, or otherwise of ROES 51 through 100, inclusive. The Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants are in some way responsible for, or participated in, or contributed to, the matters and things complained of herein, and is legally responsible in some manner. Plaintiff will seek leave to amend this Complaint when the true names, capacities, participation, and responsibilities have been ascertained.

**STATEMENT OF FACTS**

12. Plaintiff, a Black male, started his employment on or about March 1, 2018, as a Production Supervisor in Fairfax, South Carolina with Georgia Pacific-Wood Products, LLC. There were no issues with Plaintiff's work performance in South Carolina.

13. On or about March 2019, Plaintiff relocated to Las Vegas, Nevada, as a Production Supervisor for Defendant, Georgia Pacific-Gypsum, LLC, an affiliated entity of his prior employer.

14. At the beginning of his employment in Las Vegas, Plaintiff had no issues with his employment and had a positive work relationship with his supervisor.

15. Plaintiff excelled at his duties as Production Supervisor. In fact, his team was one of the highest producing teams for the year of 2019.

//

16. Plaintiff's job duties, included but were not limited to, scheduling, and assigning personnel, establishing priorities, revising schedules, resolving problems and reporting results of the processing flow on shift production summaries. While Plaintiff's job included management of his team regarding tasks and scheduling, he did not have authority to fire or discipline his supervisees without management's intervention.

17. In and around October 2019, Brett Diliberto became Plaintiff's supervisor.

18. After the change in supervisor to Mr. Diliberto, Plaintiff encountered difficulties at work.

19. Plaintiff was the only black employee and only black Production Supervisor in the North Las Vegas location.

20. Plaintiff's management condoned and ratified a hostile work environment and racial discrimination when it failed to address racially discriminatory language and discrimination in the workplace. As a specific example, Plaintiff experienced racially motivated language, when one employee/supervisee told the Plaintiff that "all lives matter" in reference to the events from January 6, 2021, capital attack, in a clear attempt to denigrate Plaintiff based on his race.

21. Additionally, Plaintiff had multiple instances with either insubordination from his supervisees, disrespectful behavior, and violations of safety protocol. In one incident, a non-black employee/supervisee, after receiving typical instructions from Plaintiff, responded with insubordination by stating that he did not have to listen to Plaintiff. This occurred on the production line in front of the other employees that Plaintiff supervised for this shift. Plaintiff's non-black supervisees regularly acted out in a manner that they would not do with a non-black supervisor.

22. The behavior described above is problematic because this employee was under the immediate supervision of Plaintiff for an entire shift, was insubordinate, and undermined Plaintiff's authority with the other team members. Moreover, this behavior also impacted productivity, which is detrimental to Defendants' bottom line.

23. Plaintiff immediately reported this behavior to management, including Mr. Diliberto, but no action was taken by management. Despite these serious concerns about this employee, Defendants did nothing to remediate this situation or discipline this employee.

24. Following that incident, a serious breach of safety occurred when a non-black employee, under the supervision of Plaintiff, threw a knife down the production line out of anger. Again, Plaintiff reported this incident to management, including Mr. Diliberto, and again, no action was taken. Given the severity of the employee's actions, Defendants refusal to discipline Plaintiff's supervisee was apparently motivated by some prejudice against Plaintiff.

25. Throughout Plaintiff's tenure as Production Supervisor for Defendants, when Plaintiff approached management with reasonable requests for action due to insubordination, racially motivated speech, or employee safety, management consistently ignored Plaintiff's concerns, which created a hostile work environment. This failure to remediate or take action subjected Plaintiff to unwanted harassment and created a hostile work environment. Plaintiff was the only black Production Supervisor during his tenure as an employee for Defendants.

26. Non-black Production Supervisors were not treated in the same manner as Plaintiff. It is apparent that this disparate treatment was the result of racial discrimination.

27. Despite appropriately reporting the problems to management, Plaintiff was terminated on or about July 14, 2021, because he was black and as retaliation for complaining about the despicable conduct described above.

28. Defendant would not have been terminated Plaintiff if he was not black.

## COUNT I

### TITLE VII - DISCRIMINATION
### (RACE AND NATIONAL ORIGIN)
Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e *et seq.*)
Title VII - Civil Rights Act of 1991 (42 U.S.C. §1981 *et seq.*)
**NRS § 613.330 *et seq*.**

29. Plaintiff hereby incorporates paragraphs 1 through 27 of this Complaint as though fully set forth herein.

30. During the course and scope of Plaintiff's employment, DEFENDANT, by and through its agents and employees, discriminated against Plaintiff in the terms, conditions, and privileges of employment in various ways, in substantial part because of his race and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et. seq.

31. DEFENDANT'S unlawful discrimination against Plaintiff included treating Plaintiff differently based on his race and/or national origin related to employment, including recruitment, hiring, assignments, discipline, promotion, and benefits.

32. Specifically, the disparate treatment included DEFENDANT failing to curb racially motivated insubordination by his team.

33. Plaintiff would not have been harassed or terminated had he not been black.

34. As a proximate result of DEFENDANT'S discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

35. DEFENDANT, through its agents or supervisors failed to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures to act of DEFENDANT as described above, thereby ratifying the unlawful conduct of its management

36. DEFENDANT'S unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's federally protected rights.

37. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT II

**TITLE VII HOSTILE WORK ENVIRONMENT**
**Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e *et seq.*)**
**Title VII - Civil Rights Act of 1991 (42 U.S.C. §1981 *et seq.*)**
**NRS § 613.330 *et seq*.**

38. Plaintiff hereby incorporates paragraphs 1 through 36 of this Complaint as though fully set forth herein.

39. During the course and scope of Plaintiff's employment by DEFENDANT, by and through its agents and employees, discriminated against Plaintiff in the terms and conditions, privileges of employment in various ways, in substantial part because of his race in violation of Title VII of the Civil Right Act of 1964.

40. During Plaintiff's employment with Defendant, he was a member of a protected class, as he is a black man.

41. Defendants engaged in harassment which was unwelcome and so pervasive that it created a hostile and abusive work environment. Plaintiff was subjected to harassment from his fellow employees and supervisees. However, management, including Mr. Diliberto, failed to discipline or take any remedial action to address the reasonable problems complained of by the Plaintiff. This harassment is prohibited behavior and Plaintiff's continued employment caused him repeated exposure to the harassment.

42. Defendants' management including supervisor, Brett Diliberto, failed to remediate or address Plaintiff's concerns regarding insubordination, racially motivated language, and safety issues when a supervisee threw a knife down the production line. When Defendants refused to address Plaintiff's concerns, Defendants created and ratified a hostile work environment.

43. The harassment unreasonably interfered with Plaintiff's work performance by creating an environment that was intimidating, hostile, or offensive. This occurred when Defendants ignored Plaintiff's concerns regarding racially motivated language, safety concerns and insubordination.

44. Defendants each of them is liable as they tolerated or condoned the conduct complained of and/or knew or should have known of these problems and failed to take prompt remedial action.

## COUNT III

## RETALIATION

**Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e *et seq.*)**

**Title VII - Civil Rights Act of 1991 (42 U.S.C. §1981 *et seq.*)**

**NRS § 613.330 *et seq*.**

45. Plaintiff hereby incorporates paragraphs 1 through 43 of this Complaint as though fully set forth herein.

46. Title VII of the Civil Rights Act of 1964 prohibits an employer from retaliating against an employee who reports harassment based upon race.

//

//

47. Here, Plaintiff participated in a "protected activity" when he informed management of the issues of the personnel issues he was having while performing his job as a Production Supervisor. Specifically, Plaintiff informed management of the racially motivated language, the insubordination and the safety concerns.

48. Thereafter, Plaintiff experienced an adverse employment action when he was terminated.

49. Plaintiff's termination was causally connected to his protected activity.

50. As a direct and proximate result of Defendants retaliation against Plaintiff, he suffered and will continue to suffer pain, humiliation, and emotional distress.

51. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Karl M. Jordan, prays that this Court grant the following relief:

1. Economic Loss for Back Pay and Front Pay, plus prejudgment interest;
2. Compensatory Damages;
3. Reasonable attorneys' fees;
4. Punitive damages;
5. Costs of suit incurred herein; and
6. Such other and further relief as the court deems just and proper

DATED this 14th day of October 2022.    WATKINS & LETOFSKY, LLP

By: */s/ Daniel R. Watkins*
_____
Daniel R. Watkins, Esq.
Caryn R. Schiffman, Esq.
8935 S. Pecos Rd., Suite 22A
Henderson, NV 89074
Attorneys for Plaintiff, Karl M. Jordan

**REQUEST FOR JURY TRIAL**

Pursuant to Federal Rules of Civil Procedure 38(b) and 42 U.S.C. §1981s, Plaintiff hereby demands a trial by jury in this action on all issues so triable.

DATED this 14th day of October 2022.   WATKINS & LETOFSKY, LLP

By: */s/ Daniel R. Watkins*
_____
Daniel R. Watkins, Esq.
Caryn R. Schiffman, Esq.
8935 S. Pecos Rd., Suite 22A
Henderson, NV 89074
Attorneys for Plaintiff, Karl M. Jordan

*<u>Exhibit 1</u>*

EEOC Form 161-B (01/2022)         **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | **Karl Jordan**<br>**c/o Theresa Santos, Esq.**<br>**8935 S. Pecos Road**<br>**Henderson, Nevada 89074** | From: | **Los Angeles District Office**<br>**255 East Temple St, 4th Floor**<br>**Los Angeles, CA 90012** |
|---|---|---|---|

| EEOC Charge No.<br>**34B-2022-00344** | EEOC Representative<br>**Karrie Maeda,**<br>**State, Local & Tribal Program Manager** | Telephone No.<br>**2137853002** |
|---|---|---|

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

    Less than 180 days have elapsed since the filing date. I certify that the Commission's processing of this charge will not be completed within 180 days from the filing date.

    The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.*

If you file suit, based on this charge, please send a copy of your court complaint to this office.

                                    On behalf of the Commission

Digitally Signed By: Christine Park-Gonzalez
07/19/2022

Enclosures(s)                     **Christine Park-Gonzalez**
                                **Acting District Director**

cc:    **HR Director**
        **GEORGIA PACIFIC**
        **11401 Hwy 91**
        **North Las Vegas, NV 89030**